Case numbers 2553-95 and 2556-51, USA v. Guy Collins, oral arguments not to exceed 15 minutes per side. Ms. Coffin, you may proceed for the appellant. Good morning. I'm Jennifer Coffin. I'm here today on behalf of Guy Collins. I'd like to reserve three minutes of my time for rebuttal. Thank you. A district court abuses its discretion when, as a matter of custom, policy, or practice, it uses a mathematical percentage of time served as a categorical gatekeeping tool for denying motions for early termination of supervised release. This case perfectly illustrates the several problems with that approach. The first problem is that it creates a de facto presumption that early termination is neither available nor appropriate unless the allotted time has elapsed, and this is disconnected from the required individualized consideration of the facts of the case at hand. What do we do with the indicative ruling you got in this case? The one where the judge said, I would, the third order that judge said, yes.  Well, I think that order, you're right, it does, the second order, I'd like to point to the judge very clearly in a bare bones kind of way said, I have this custom. Right, no. So, but then you asked in light of Tavares for a third order. Yes. Or not, you didn't ask for a third order, you asked for an indicative ruling, right? Yes, to reconsider in light of that case the position about the effect of the 50%. And so then he reconsiders and he gives reasons. Yes. So in that order, what the judge does is explains that the 50% custom is intended to, in the abstract, serve two purposes of sentencing, deterrence and the need to protect the public. And in the abstract, that might be a way to think about the amount of time served. However, the judge sort of adheres to the idea that it can be measured in an arbitrary way by 50%. And also, clearly, in the facts of this case, sort of reveals that that 50% policy and those reasons don't actually apply in this case. And that is because the court has already said about a year and a half, maybe a little more earlier, that those two very purposes do not require further supervision for Mr. Collins. Meaning in the first order? Yes. Okay. Yes. And so let me ask you just generically, I agree with you, there can't be a carte blanche rule. But surely, right, in determining whether to release someone from supervision, you can consider the length of time they've served, how successful they've been, all those factors. And is that all you're asking for is a holistic consideration? I'm asking for two things. One is that the courts say that you can't have a sort of predetermined percentage of time served custom for how you gatekeep motions for early termination of supervised release. And then at the same time, what you have to do, if you do consider, which I do believe it can be relevant, the amount of time served, it has to be as it relates to the individualized circumstances of the case. How well the defendant has done while they were incarcerated. How well they did during their first year out. So it matters that it's three months versus three years. Like if you've served three years and been very successful, that's a good indication you're going to continue to be successful. If you've served three months and been successful, that might not be the same. Well, that's right. And by statute, you can't come to the court unless you've served a year. I understand. Okay, a year versus three. You can pick however you want to do it. But you get my point. I do. And I'd like to sort of add, one of the biggest problems with this idea that you can sort of predetermine an amount of time and then make exceptions for certain people is that as soon as you say that I have exceptions to my custom, you're actually creating a barrier to getting over the gate. Because you're saying, you can show me that you've done very well, as Mr. Collins did. You can show me that you have a job and that you've turned your life around. But you have to come to me with something exceptional, which really just walks us right into the Hale problem, where you're saying it's now a requirement, if you haven't served half, to come with something exceptional. And we don't know what that is. We don't know what it could be that a person would have to come with. So, yes, I would like there to be a rule that says you can't have a carte blanche custom. You can't tie it to a number that itself has not ever been explained why you'd pick that number. And if you do consider the amount of time served, it should be individualized based on the circumstances of the case. Yes. You answered everything I asked. I'm sorry. Is there anything else you would like us to consider with respect to your argument? I don't think that there's anything at this point, given the questions. And I think I've said everything I'd like to say, except for maybe this is just falling right into what you're already thinking. But I just want to add that as soon as one court chooses a number as their percentage, and another court could choose a different number, or another court in another district could choose a different number, and then we have a system where people are not coming to the court until they can show something exceptional to get over the gate, and we have unwarranted disparities across the country, or even within the same district, because maybe not all the judges have adopted the same custom. The last thing I'd like to say is just really a point about Tavarez. And I recognize that in that case, the district court appeared to possibly rely on the dispositional report from the probation office that just bare bones said, you haven't served half your time. So there's been a suggestion that that's different, because I know you asked me about the third award. The judge said, well, that's different. That's not what I'm doing here. I'm giving you reasons. But I think I would just return to my same points, which is even when you're giving, in the way this case shows, that even when you're giving some justifications for a 50% policy tied to the statute, that's still in the abstract. It's not an individualized determination as proven by the circumstances of this case. And so with that, I would ask the court to vacate these orders. And if there are any questions that come up after my friend makes her presentation, then I'd be happy to answer them. Thank you. Fine. And you may have the remainder of your time in addition to your rebuttal time. May it please the court, Deborah Brenneman for the United States. It sounds like we may be in more agreement than even I thought we were. But the district court's orders in this case, as you've already noted, there are three separate orders in which the court denied early termination of supervised release. Those orders are flawed, but not in all of the ways that the defendant accuses them of being flawed. Why not just agree to remand and clean this up? I mean, it seems to me the district court, right, the first and third order conflict. The second order has its own set of problems. Why not just go back? I mean, we're fighting about a lot that the government could just have said, we agree to a remand. The district court needs to do this right. And let's do it right. And we are entirely comfortable with a remand. If this court clarifies the extent to which a district court may consider the amount of time served on supervised release. What is your position on what appears to be the so-called custom of this district court in saying that people cannot get early termination of supervised release before they have served 50%? This particular judge does describe it as a custom and treats it as a custom. It is not a presumption and it is not an inflexible rule or a hard and fast rule as this court described in Kate. I, as a court of appeals, say that there should not be a custom of any district judge or any district court to say that you must serve as a custom 50% unless there are exceptional circumstances. When the statute says simply you must serve one year and in this case, there was an eight-year term of supervised release. So this individual has come, Mr. Collins, has come three times to the district court. And the district court the first time said, you're really behaving well. You're doing excellently. Come back later. So should we be clear that there should not be a, whether it's a 50% custom or some people might say an 80% custom or whatever. I think the word custom is another way of describing what a court ordinarily or generally does. And what this court said in Hale is that a court may have that kind of general custom. It said we might expect district courts to generally find early termination only appropriate where there are, in fact, extraordinary circumstances. The court just can't require that. So it can't be an inflexible rule. It can't be a presumption. But it could be a custom. It could be a general practice of the court to assume the defendant should serve half of the imposed term of supervised release. Some other judges may use a particular amount of time. But you don't see this as a presumption? I don't see this as a presumption, in part because of the way the court explained it in its third order. It says this is not inflexible. We do have cases with this. Yeah, but the third order conflicts with the first. I mean, I get what you're saying. My problem is the way it operates versus the custom, quote, unquote. The way it operates, as your friend on the other side said, makes you show exceptional circumstances. And so I guess what I'm struggling with is you have a year, right? And I get judges can consider. I did it when I was a district judge for 10 years. I mean, I would consider how well they've done in that year. And then I may modify the conditions. Then I may go to unsupervised. Then I may, because it's a relationship you form between the judge and the defendant at that point. And you're trying to help them succeed. But just a blanket, what appears to be to us just a blanket rule, especially with these kind of conflicting orders, is where I'm struggling in the circumstances of this case. I get the point. But it seems to me you can have that custom of, like, I had a custom of moving them slowly off if they were doing well. But here it's just, like, first it's these reasons. Then it's I have a custom. Then it's these reasons that conflict with the first set of reasons. Like I said, the district court's orders are inconsistent. And that's why we recommended a remand. But we think clarification from this court about the extent to which the court can consider the amount of time served is important. I understood the defense briefing to say that it is irrelevant and impermissible for a court to ever consider that. That's not what I heard Ms. Coffin say this morning at all. I don't get that. And as long as it is clear that a district court may consider the amount of time a defendant has served on supervised release, as well as how well he's been doing on supervised release, we agree with that. We also agree that the court cannot require. It should just be tied to the 3553A factors rather than just, you know, you have to do half the time. In many cases it's tied to a 3553A factor. But that's not the only requirement in 3583E. There's actually three parts to that. There's the threshold requirement. You have to serve at least one year. The court has to consider the eight enumerated 3553A factors. And then the court has to be satisfied that early termination is warranted by the conduct of the defendant and the interest of justice. So the interest of justice would encompass factors like Congress originally said this offense requires an eight-year mandatory minimum. That doesn't prevent the court from reducing, from terminating supervised release early. I understand that. That's well settled. But that, the court could reasonably conclude that the interest of justice requires an assessment of how much supervised release did Congress think was appropriate for this offense? How much time has this defendant already served? So could, here there was a supervised release term mandatory of eight years. Could, if we were to remand with vague instructions to this district court, could this district court say, oh, Congress said eight years. I think anybody who has had a mandatory supervised release term of eight years should serve at least four years. So I'm going to have that as my default rule. And I'll look at the fact that it's more than one year and it's under the 3553A factors. I've said this guy is perfect. But I'm going to have this principle that when Congress says eight years, I'm going to make sure it's four years. If the court treats that as a requirement, that would be reversible error. That's the lesson we get from Hale. I'm the DJ and I'm going to say it's a custom. As a practical matter in this case, Mr. Collins has now served four years. I know that, but that's beside the point here. I think the flexibility that this gives a court, we tend to think that someone who has completed at least half of the time is more likely to be able to succeed on the full amount of time. And so maybe early termination is appropriate. Someone who has only had a limited amount of time to demonstrate their compliance and continued compliance, a court could reasonably infer that further supervision is still appropriate. So the rule we're asking here for is clarification that a court may consider. It cannot require a particular amount of time or a particular percentage of time. But a court is entitled to consider that amount of time or the percentage of time as part of its assessment of whether early termination is warranted. The fact that he served four years, presumably without issue, is better than two years or vice versa. I don't think the other side is asking us not to consider that. I think she pretty clearly said in response to my question, of course, that's a relevant consideration. It's the carte blanche rule, custom, whatever, without any of the other analysis that is required in making that determination. I agree. The court must engage in individualized analysis. That's one of the things we share. The court has to consider the 35 theory factors. A blanket rule without more is not individualized. I'm sorry? A blanket rule, custom, whatever, without more is not individualized. I would agree. The district court, of course, has very broad discretion to figure this out. And those two factors in the last section of 3583, the conduct of the defendant and the interest of justice, this court's described those as expansive factors. So I think those are even broader than just the 3583 factors that are specifically enumerated there. So in this situation where the first order, essentially, I'm going to summarize, the first order said to Mr. Collins, he was doing really well. He didn't have any issues. What else would there be? And I think it also said there's no need for deterrence or for protecting the public. The court also said in the first order that he thought that it would create an unwarranted sentence disparity if he released the defendant after just 18 months when he had received an eight-month mandatory minimum term of supervised release. So because it started with eight years and he had only then served 18 months, the court said further supervision will benefit the defendant. That's arguably related to the A2D factor, providing defendant with necessary treatment and support, as well as the need to avoid unwarranted sentence disparities. Of course, to assess whether- That was dealing with his policy of having everybody serve at least half the time. That first order never mentioned a policy whatsoever. And the court discussed multiple 3553A factors, considered all the information presented to it, engaged in the kind of independent decision-making this court expects of a district court. This is not a case like Tavares, where the court checked a box and signed a form and said, request denied. And in those cases, no analysis whatsoever of the 3553A factors happened. The place that things really went off the rails, in my view, is in the second order, because the court says that, as a matter of custom, it will not consider a motion until the defendant has served half. We know that's not what the court actually meant, because he had already entered the first order, but that statement is incorrect. Under this court's precedent, we are not defending that statement. I think what the court meant is, as a matter of custom, I will not ordinarily grant a request for early termination until you have served half of it. But to say that he doesn't have to consider it, that is reversible error. The clarification that he provided in the third order, however, makes clear what he was actually trying to do. And that's part of the reason we gave you two options in our briefing. Because, as this court has said in other contexts, even if a district court considers something it shouldn't have considered, maybe it considers inadmissible evidence or it considers a clearly erroneous fact, if it doesn't actually rely on it, the decision can still be affirmed. Given the confusion between these orders, though, I suggest that the best possible outcome here is a remand for the district court to clarify, to explain exactly what it meant and what it's doing. But because it specifically asked for this court's guidance in its third order, this court should clarify that it is entitled to consider the amount of time he has served, both amount and percentage, as one of the factors. But that is not a requirement in itself. So the decision here should parallel the analysis in Hale, for example. A court may ordinarily or generally expect to find extraordinary circumstances, but a court can't require that. A court cannot introduce an extra-textual requirement. On that, we agree that it can't be a requirement, but it can be a consideration. Here, as we said, there's complications and conflicts between the district court's orders. I think a remand for the district court to explain its reasoning, or given the passage of time, perhaps just to release Mr. Collins, would be appropriate for the district court to deal with that in the first instance. We do oppose the suggestion this court can remand with instructions to grant this. This is a reviewing court, not a court of first instance, and that decision should be made by the district court in the first instance. Unless the panel has other questions, we'll rest on the brief. Thank you. Thank you. Well, I do just have a couple things. Ms. Printemann mentioned that the district court in the first order talked about a concern with unwarranted disparities if you were to release Mr. Collins as early as he had asked. But I think it's really important that the court focus on the third order when it's thinking about what possible justifications remain for keeping him under a term of supervised release, because in that order, the judge was very emphatically explaining his rationale and didn't mention anything about the need to avoid unwarranted disparities. Well, by then, there wasn't, right? I mean, by then, the factors change. Well, he still hadn't served four years at that point. Right, but the first order's in 23. Maybe at that point, the judge doesn't think that anymore. I'm not saying, look, his orders aren't consistent. I'm just saying that it could be that a factor that matters at 0.1 doesn't matter anymore at 0.2. I would hope that you would want that to be true. Otherwise, you're never going to get granted. I absolutely would like that to be true. But I just wanted to use that as a jumping-off point to say that in this particular context, when the courts have the authority to grant early termination based on the facts and circumstances of the case, that any sort of disparity or difference between what might happen in another case is warranted by the facts of this case so that there are lots of people who don't do well when they first come out. It's very difficult to transition in the first year. Sometimes it's very hard for people in the first two years. And you know this, Judge Thapar, because of your experience. But so to say that it would be unwarranted disparity for Mr. Collins who did do well doesn't really clock either. So I just want to point out that even saying unwarranted disparities as it relates to the amount of time served, I would ask that a district court explain how that is in this particular case compared to someone who didn't do well, for example. The other thing I want to say is- It's weird just because of what courts have traditionally said unwarranted disparities means. But it's not a factor in this case anymore. I agree with you about that. So I won't belabor that any further. But I did want to say one other thing about the interest of justice that does appear in this statute. Because that is something that's different from an original sentencing that's not there. And I think what I want to do is highlight that it's not so much the consideration of time served. And I hope that I made this clear in my briefs, but I do want to make this clear now. And I think, Judge Thapar, you understand this is my point. It's the use of a number which is arbitrary. 50% is an arbitrary number. Why not 20? Why not 70? And if there's one thing that is anathema to the interest of justice, it's arbitrariness. So I think that everything I'm saying fits with that factor as well. And I also recognize that maybe this court can't order the district court to terminate supervision. Although it seems to me, Judge Moore, that there is really very little left or anything left for a court to say would be the reason why to keep Mr. Collins on further supervision. So he would be satisfied, of course, with a remand for reconsideration, a vacation of the two orders, and a remand for consideration without the use of a custom that requires a percentage of time served. A vacation of the three orders or two? There are two that are appealed. Oh, okay. Thank you. Yeah. We appeal the second order and then the order denying the motion for indicative ruling. Okay. So hypothetically, and I'm truly making this up, hypothetically, if Mr. Collins had between the third order and now had a violation of supervised release, would that be something that if we remanded the district court hypothetically would be able to consider then? So one of the reasons why I framed my request for relief as instructions to actually terminate based on what was presented to the court is because it does seem like the fact that he's been under supervision for longer, which has its burdens, you know, does run the risk for him to get into trouble while he's under supervision. I do think that anything that happens, say if he committed a crime during this time, there's no way that we would be able to say that the judge can't consider that if this was remanded for reconsideration. So, yes, I think that that is a risk. That was, frankly, unfair to him as a result of the erroneous rulings in this case. Do we have the power to order his release from supervised release? You know, I know I can point to one court of appeals, not this one case from several years ago out of the 11th Circuit, and it's Irie where the 11th Circuit vacated, I think it was a downward variance, and ordered the district court to impose a certain sentence. A specific sentence? Yes, Irie. That seems contrary to everything. That's what we said. You know, we filed a cert petition, we did all that, but we didn't get anywhere with that. But that has happened. That's the last thing you want. I know. Remember, I wrote shrank. So, I mean, I don't think that's really the law in this circuit. I find myself agreeing with Ms. Brenneman on, you know, the point that it would be very difficult, I think, for the court to sort of unilaterally order the district court to take a certain action. But I do think the court could make it clear that it would, you know, there are things, I guess the way I framed it was that there are factors that have already been either taken off the table or were removed from the equation by the time of the third order. The problem is the court of appeals is so disconnected at the end of the day, in a way that a district court, like I said, during supervision, you really develop a personal relationship. There are so many people I let off supervision early that if I was on the court of appeals, I'd say no way. But at the district court, I had interaction with them every three months or every six months and see how they're doing. And they'd call my chambers to check if they could do something. So, I mean, you know, there's just so much more interaction. The last thing defendants want of anyone is the court of appeals doing it because we're looking at a cold record. We don't have those interactions. Well, I think generally speaking, I'm going to agree. We don't want the court of appeals telling the district courts what to do. But this case does present to me some unusual circumstances where we have a person who has... And once you open the door, you open it both ways. Right, right. Well, I think that Mr. Collins would be satisfied if the court were to vacate the orders and remand for reconsideration without the use of the policy. So, thank you very much. Thank you. With the clerk, recess court.